Case number 13-1803, United States of America v. Samuel Pego. Arguments not to exceed 15 minutes per side. Mr. McCulloch, over to you for the balance. Good morning, Judge Guy. Good morning, Your Honors. May it please the Court. My name is Mark McCulloch. I represent Mr. Pego. At the earliest chance that he had, Mr. Pego raised to the Court his dissatisfaction with his hired counsel. His hired counsel had not seen him, spoken to him, responded to him in the two weeks between his arraignment on a  trial. In its essence, Mr. Pego's motion, or request, to hire his own counsel and replace his appointed trial counsel, the denial of that motion is a structural defect. It's a structural defect in that this is exactly the Lopez had when Justice Scalia said that no prejudice inquiry is necessary at that point, because the structural defect is such that it requires relief. Well, you know, the Court doesn't have to stop a trial in order to let a defendant to change counsel. At whim, does it? It does not, Judge Gibbons. The decision- Hadn't jury selection already begun in this case? Yes, Judge Gibbons. Jury selection had begun. It had begun, and it was in its infancy. It was the first time that Mr. Pego had seen his appointed counsel prior to the start of the trial. Two weeks prior to the start of trial, and it's important, I think, to examine the timeline a little bit. Two weeks prior to trial, on February the 12th, there was a hearing on the plea cutoff date that the trial court had established. At that time, Mr. Pego rejected a plea deal that had been offered, presumably negotiated. The record doesn't reflect the conversations or any suggestion that there wasn't some kind of negotiation going on. Mr. Pego then rejects the plea deal. He is then stood and stands for arraignment on the superseding indictment. And two weeks later, the trial begins. In that two-week period of time, trial counsel admits to the court, and the court correctly identified this, you didn't talk to your client, you didn't see your client, you didn't go over the case with your client prior to the start of trial? Yeah, he had had the same appointed counsel since counsel was initially appointed, correct? That is correct, Judge Gibbons. And there had been some elapse of time, presumably, between the appointment of counsel and the date on which Mr. Pego rejected the plea agreement, correct? That's correct, Judge Gibbons. And so you're not saying that the appointed counsel never met with him. You're saying that he never saw him. I thought you just told us he never saw him. But he must have seen him both at the arraignment and on the day he rejected the plea in open court. So all you're saying, all Mr. Pego's position is, was that his appointed counsel should have seen him in the two weeks prior to trial. In essence, Judge Gibbons, what we have argued, what Mr. Pego's concerns were, is that his trial counsel was not investigating, was not communicating with him throughout the period of time between the time of his initial arraignment in August, the notices of filing by the government, notice of expert testimony, or notice of opinion witness testimony, and notice of discovery in October. And then this February 12th cutoff date, plea cutoff date, that the communication during that time was sporadic, that it was incomplete. Mr. Pego had repeatedly requested of his trial counsel to pursue matters, to pursue discovery, to pursue witnesses. And clearly, the record suggests that the trial court, in its inquiry, had difficulty understanding what is clearly inartfully articulated. Can I ask you a question? Yes, ma'am. The district court inquired specifically about the representation and the causes for Mr. Pego's dissatisfaction, correct? The court did make an inquiry, yes, Your Honor. And the court made an inquiry of both appointed counsel and Mr. Pego, right? It did, Your Honor. And what's our standard of review? It's an abuse of discretion, Your Honor. And what sets this case apart from the many other cases in which a defendant becomes dissatisfied with appointed counsel? The court makes an inquiry and decides, at this point in the case, not to relieve appointed counsel. What is it that sets this case apart in such a way that what the judge did would be an abuse of discretion? Judge Gibbons, there are two points that I'd respectfully submit to you in answer to your question. First is, when it was first informed of an issue involving counsel and Mr. Pego, the court ignored the request. The court said, not going to deal with it. Has nothing to do with jury selection. We're plowing ahead with jury selection. Don't worry, Mr. Pego. We'll let you have your chance at some point. But at the immediate time. Which was when? It was at his earliest chance, at the start of what was jury selection. The jury had not been seated. The jury had not been fully empaneled. They'd already started empaneling the jury. There were some that were there, but it was certainly not complete. There was no motion to continue made immediately before the proceedings began. There wasn't, because his trial counsel insisted there was no problem. And Mr. Pego had communicated to his counsel that I'm planning on asking the court to replace you. And I did not have the benefit of being at trial to understand the circumstances. But certainly, it's reasonable to assume that Mr. Pego's dissatisfaction with his trial counsel was evident enough for the court to have inquired, are you gentlemen OK? Are you gentlemen resolved? That's the duty on the district judge to ascertain the defendant's state of mind and state of happiness with his counsel, without his telling him, and to begin to make an inquiry as to the mental well-being of the defendant with respect to his attitude toward counsel. The Benitez case suggests that it's an affirmative duty on the court to inquire once the issue is brought. Before a trial begins, when there's no indication, or even if the defendant looks unhappy. I mean, have you ever sat up on a bench and looked at how defendants look? They're generally not a cheery lot. I have not had that privilege, Judge Gibbons. However, I would suggest to you that. In the world, you would know whether he's unhappy because he's there, or unhappy because he's unhappy with his lawyer. The trial court obviously had some prescient understanding, Judge Gibbons, because the court inquired. And the court then said, are you gentlemen satisfied? Mr. Pego said, no, Your Honor. The trial counsel then approached, because the court would not let Mr. Pego speak. The trial counsel approached and said, Judge, he wants to fire me. He wants to replace me. The judge says, well, that doesn't have anything to do with jury selection, so we'll let it go. We'll push it through. Once the jury is seated and sworn, the court then makes an inquiry. And this would be the second part of the second suggestion to Your Honor, in response to your inquiry, is that. Certainly it wasn't prudent on the part of the district court to get itself in a situation where it was going to be more difficult to allow him to replace his lawyer, given that the jury had been sworn.  to an abuse of discretion. And to that point, Your Honor, the MAC factors, which is the standard, the test under which the court would examine a motion and whether or not a motion was properly discretionary, the first three of those factors are then balanced against a fourth. And here there was no balancing. There was no balancing at all. The court never inquired as to the extent of the prejudice or the inconvenience or the crowdedness of the docket. There was no inquiry whatsoever into what made the public's interest in this case moving forward so compelling that it would override the defendant's clear, clear articulation that he wished to hire his own lawyer, because he was dissatisfied. Without that balancing, and all of the cases suggest that the balancing exists, and that's part of the examination, Your Honors, is that there must be a balancing. And absent that balancing, the district court has abused its discretion, because it's simply not what the law requires, what the law under MAC requires. Without that balancing, the district court did not complete its affirmative duty. Your time is about. I gather that that was the issue you felt was your strongest issue. There are. The only other issue that I would address to the court's attention were certainly the points raised in point number two, where Mr. Pego alleges that the record is so plain, so clear, that even under Massaro, that an ineffective assistance can be found. And finally, if I may, the fifth point that was raised was the judge's recitation of evidence that was not introduced at trial in suggesting to the jury a justification for the flight instruction. OK. Let me ask you one question about your sentencing claims, even though your time is up. Your sentencing claims relate to, first, a failure, you allege, to articulate sufficiently 3553 factors. And second, double counting in a number of respects, in terms of the enhancements. Are those all your claims regarding sentencing? That's correct, Judge Giddens. Thank you. I thank the court. Mr. Goetz. May it please the court, Andrew Goetz for the United States. The district court here did not abuse its discretion in denying the defendant's motion to substitute counsel in the midst of jury selection, under any of the four prongs that this court considers here. First, and most importantly, this request was very untimely. It was not, as defense counsel now claims, at the earliest possible time. It was about 2 3rds of the way through jury selection. It's page ID 213 and 214, where he first brings this to the district court's attention. It was in the midst of jury selection. The jurors are all seated in the courtroom. The district court properly says, well, this does not pertain to jury selection. But on page 214, the district judge turns to the defendant and says that, after jury selection, he will address the defendant's claims and his complaints. And notably, the defendant was happy with that. If you look on page ID 214, the defendant responds, thank you, Your Honor. And then they finish the final third of jury selection. And the district court does address his complaints and addresses them quite thoroughly. How did this come up? Does it arise from the district judge noticing that Mr. Pego looks unhappy? No, it does not, actually, Your Honor. I'm not aware of any case where a judge has done that. It comes up because defense counsel tells the judge that something along the lines of, I believe we have an issue. And then he confers with his client and tells the judge that the defendant wants to hire another attorney. The judge says, well, we're in the midst of jury selection. Why don't we defer this until after jury selection? And that's what happens. A motion in the midst of jury selection is untimely under any definition of the word. Defense counsel just referred to Gonzalez-Lopez. The Supreme Court was very clear in Gonzalez-Lopez that even the right to retained counsel of choice is circumscribed by, quote, unquote, the needs of fairness and the demands of the trial court's calendar. That's what we have here. This court, since Gonzalez-Lopez, Mooneyham is one example in our brief, has found that a request to hire a new attorney even earlier than this was still untimely. We've cited several cases in our brief saying that even two weeks before trial is untimely. Second, the district court did thoroughly inquire. There are about 20 pages of transcript here where the district judge walks through the defendant's complaints, asks follow-up questions, asks his attorney to respond, gets input from the government, and then concludes that there is no reason for this defendant to replace his appointed attorney with, I guess, a retained one, although the defendant isn't quite clear. And the record supported the district court's decision. The defense attorney explained that he had met with the defendant, and the defendant had given him a list of witnesses that the defendant claimed would exonerate him. Many of those witnesses were dead phone numbers or people that the attorney couldn't locate. One witness he did locate, Vicki Sherry, laughed at him and said that she had nothing helpful, that she would be able to stay at trial. Another witness that the defendant kept bringing up was somebody called Big D. He didn't actually have a name or a phone number or anything else to contact her. And nobody had heard of her till the defendant brought her up. It looks like it's the same theory the defendant was putting forward in his witness tampering letters to the victim, where he's making up a possible female assailant who had committed these assaults instead of him. But giving the name Big D doesn't give an attorney a lot to go on. Further, the defense counsel stated that he did have the transcripts that the defendant had raised. He had one of those transcripts. It was a transcript where the victim lied at the probation violation hearing, the defendant's probation violation hearing, and said that he wasn't the person who hit her. The defense attorney had that. And the defense attorney used it at trial here. It was the thrust of his defense. It was the thrust of Mr. Pago's defense that somebody else committed these assaults. And the defense attorney used that transcript to suggest that the victim was lying and somebody else committed these assaults. That doesn't show a lack of communication. That shows communication. That shows the attorney who had met with the defendant, understood his theory, had investigated it, had prepared for cross-examination using the materials he could, and had presented this defendant's defense. Now, defense attorney claims that they hadn't met at all. That's just not true. The defense attorney conceded that they had not met in the two weeks between the final pretrial conference, where the defendant said he had rejected the government's plea offer and wished to go to trial, and the date of the trial. But there are at least a couple of other examples in there suggesting they had met before, notably at the arraignment. The attorney appeared for this defendant. That was six months earlier. He had been representing him for six months. They had discussed the plea agreement. That's clear in the final pretrial conference transcript. And the defendant even claimed he had reviewed some filings from his attorney. So even on the limited record we have here, it's clear they met several times, and that this defense attorney took his concerns seriously, and investigated them, and presented them at trial. Finally, on the final prong, the balancing of the defendant's request with the prompt and efficient administration of justice, yes, this was a short trial. But in other circumstances where there's a short trial, this court has likewise held that that balancing favors the district court's decision, particularly under an abuse of discretion standard. Trujillo, one of the cases we cited in our brief, that was a two-day trial as well. And yet this court still held that the balance favored the district court's decision. And that's true for a number of reasons. They would have had to get a whole new panel of jurors. They would have had to coordinate a lot of different witnesses' schedules, the attorney's schedules, the court's calendars. They would have had to do all that to grant the defendant's request in the midst of jury selection. Counsel, Judge Guy, in terms of the balancing, though, even if all those things happened and you were into the trial and whatnot, wouldn't one of the important factors be the severity of the breach between the client and his attorney, the seriousness of it? Because it seems to me that judicial inconvenience would have to be set aside in favor of making sure that the defendant had an opportunity to have a fair trial. Yes, that's probably right, Judge Guy, that if it was a very severe breakdown, that would outweigh the judicial inconvenience. I mean, that's why it's a balance. So you look at the nature of the breakdown versus the inconvenience to the court. And that's why the nature of the breakdown here is important, because it just does not rise to the, quote unquote, total lack of a communication preventing an adequate defense. That's the standard here. And this doesn't show a total lack of communication. It shows quite the opposite, that this defense attorney did take into account the defendant's concerns, researched those witnesses, presented the defense that the defendant wanted to raise at trial, and just wasn't successful because the evidence was overwhelming. So yes, Judge Guy, you are correct that if it was a severe breakdown, that would not be enough, or the judicial inconvenience would not be enough to outweigh that. There just wasn't a severe breakdown here. I have one other question, counsel. The sentencing issues didn't get discussed because of time constraints. But I believe another one that was raised has to do with insufficient articulations of the reasons for imposing consecutive sentences. That's an issue in the sentencing part of this case, too, isn't it? I'm not sure that's right. I know he raised the sentencing issue about articulating the 3553A factors in support of the sentence. I'm not sure he specified it was consecutive versus concurrent. But in any event, this court is reviewing that under a plain error standard because there was a Bostick question asked and the defendant didn't object. And it wouldn't be plain error to stack the sentences consecutively to make a within-guideline sentence, which is what happened here. His guideline range was 360 to life. And the district judge gave him a sentence of what's effectively life, 780 months. So it's within the guideline range. And to do that, the judge had to stack several of the sentences consecutively. And he did that by explaining that although this defendant had some good qualities, he had a GED, he was intelligent, he had some excuses for his actions, notably his alcoholism, the crimes here were just too heinous. And this defendant had a very lengthy rap sheet. His criminal history was, I think, at 19 criminal history points. The guidelines stopped counting at 13. And that doesn't even include his tribal convictions, which don't count under the guidelines. And this defendant had a very poor criminal history. This crime, in particular, was very, very heinous. He hit the victim in the face with a fireplace poker, trapped her in a room, beat her repeatedly over two days, broke several bones in her face, knocked out seven of her teeth, and then didn't show any remorse. He tried to tamper with her testimony while in prison, sending her letters and phone calls to try to get her to make up an exculpatory story. So the district court did mention many of those things at the sentencing hearing, and it certainly does not rise to plain error on that record. Why don't the tribal convictions come into play for the guidelines? I don't know. I think the guidelines themselves say not to count them, I believe. But I'm not sure what the reason is for that. But the guidelines do not count them. All right, but they certainly can be considered in the sentencing, even if they're not in the guidelines. Absolutely. Absolutely, they can. And those were some violent convictions, assaults. Tell me what the tribal convictions were for. I don't recall offhand. I think some of them were similar to this offense. I mean, I don't know if any of his priors were this heinous, but he had a lot of domestic violence convictions and assault convictions. I think some of those were among the tribal convictions, but I don't know offhand. I'd be happy to follow up if Your Honor would like. We can check. Thank you. I'm happy to answer any questions on either of those two issues, sentencing or replacement of appointed counsel, if the court has any others. OK, I'll just finish up on the ineffective assistance claim. This case proves the rule rather than being the exception. One thing I'd like to note, he claims in his brief that there was a warrantless search for the knife. That's just not true. There was a search warrant. That search warrant isn't in the record because there was no motion to suppress. It would be in the record in a 2255 proceeding. And it just shows why this court should not address those claims on direct appeal. It's even mentioned in the record briefly, the search warrant at page ID 36 in the government's discovery notice. In the midst of that page, there's a search warrant listed. So it's just further reason not to decide these types of claims on direct appeal. There just isn't a record. For these reasons, unless the court has any further questions, the district court's judgment should be affirmed. Thank you. Thank you. May it please the court. Judge Guy, I think you were absolutely correct in identifying the necessity of the balancing that's there between the two factors. And frankly, although there's a representation by the government of all of this inconvenience, none of it was discussed because it was never inquired of. The trial court never made the inquiry. What is it balanced against? What evidence, what record is there, even if the inquiry was taken at the point where the trial court said, all right, now I'll hear you. But even if I decide to let you do it, it's too late because we already sat the jury. Well, guess what? The judge created that issue when the judge said, look, it doesn't have anything to do with jury selection. We'll deal with it later. There was too much interest in rushing this case to a jury in a two-week period of time to allow for the first opportunity that the court must affirmatively inquire. The first opportunity. Now, the government, in its answer, initially said and initially proffered to the court that the first opportunity was the inquiry that the court made after the jury was seated. That record, that record offered, was inaccurate. Government has conceded now that the inquiry was made prior to that point. The court did not take it up. It's an affirmative duty on the court to examine the nature of the conflict. The conflict. I know you're interested in talking about that, but I'm interested in asking you about something else before your time runs out. I'm happy to respond, Judge. Judge Guy asked your adversary about consecutive sentences, and I want to make sure I understand how that comes up in your brief and in your position. I didn't include that among the issues I asked you about. But as I understand it, that's a part of the argument that counts three and five are duplicative, and that requires an analysis of whether one requires proof of a fact that another one, that the other does not. And then you make the point in your brief that on counts three and five, Mr. Pago received consecutive sentences, which I read as a comment on the degree of harm that you believe resulted from his being sentenced on duplicative counts. Am I reading your argument correctly? I think in part you are, Judge. What's the other part? The other is that the consecutive sentences, the fact that there were two sentences, there was a sentence on each of those counts, in and of itself says that the suggests that the trial court had sentencing, one, double counted it, which we've suggested. Two, to the severity, certainly, although that's not necessarily an issue that I respectfully suggest is a concern. The overall length of the sentence is an issue you raise through the duplicative counts and through the double counting argument, but not as an issue in and of itself. Not an issue in and of itself, because I don't think it's properly before the court in this venue. Certainly, that might be a claim that would certainly be raised in a 2255 proceeding, but certainly not on a direct appeal here. Anything else? Judge Guy? Nothing, thank you. We appreciate the argument both of you've given, and we'll consider the case carefully.